**Ralph BYRNES, Petitioner, Appellant,**

v.

**George VOSE, etc., Respondents, Appellees.**

**No. 91–2246.**

United States Court of Appeals, First Circuit.

Argued May 8, 1992.

Decided July 17, 1992.

See also 357 A.2d 448, 433 A.2d 658, 762 F.Supp. 468, and 942 F.2d 1.

---

F.Supp. 468 (D.R.I.), *aff'd*, 942 F.2d 1 (1st Cir.1991). The district court decided that the futility exception to the section 2254(b) exhaustion requirement did not apply to Byrnes since he and Ouimette were convicted of different substantive crimes based on different testimony. *Byrnes v. Vose*, 777 F.Supp. 171 (D.R.I.1991). We find no error on the part of the district court, and affirm the dismissal of Byrnes' state conviction federal habeas corpus petition without prejudice.

Edward J. Romano, with whom Paul Di-Maio, Providence, R.I., was on brief, for appellant.

Aaron L. Weisman, Sp. Asst. Atty. Gen., with whom James E. O'Neil, Atty. Gen., Providence, R.I., was on brief, for appellee State of R.I.

Before BREYER, Chief Judge, CYR, Circuit Judge, and FUSTE,* District Judge.

FUSTE, District Judge.

Petitioner Ralph Byrnes appeals a Rhode Island federal district court decision dismissing his 28 U.S.C. § 2254 state conviction habeas corpus petition for failure to first exhaust state postconviction remedies.[1] He argues before us, as he did before the district court, that it would be futile to conduct further collateral proceedings to review his conviction in the Rhode Island courts, since a codefendant, John Ouimette, sought and was denied postconviction redress in the state courts prior to successfully receiving habeas relief in federal court. *See Ouimette v. Moran*, 762

## I.

Petitioner Byrnes was convicted for his participation in the notorious 1975 Bonded Vault Company robbery in Providence, Rhode Island. Nine masked men entered this commercial safe-deposit company, robbed its employees at gunpoint, and broke into 146 safety deposit boxes. They stole approximately $4 Million in cash and valuables. *State v. Byrnes*, 433 A.2d 658, 661 (R.I.1981).[2]

■ Byrnes' petition for habeas relief is based on the same ground that was successfully presented in the federal forum by codefendant Ouimette after exhausting state remedies. He claims that the state prosecutor's failure to disclose a key prosecution witness' extensive criminal record violated his due process right under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Ouimette*, 762 F.Supp. at 479–80; 942 F.2d at 12–13.

The record developed by the district court and confirmed by us during oral ar-

---

* Of the District of Puerto Rico, sitting by designation.
1. Section 2254(b) and (c) of Title 28 provide:
    (b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.
    (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this

section, if he has the right under the law of the State to raise, by any available procedure, the question presented.
28 U.S.C. § 2254(b), (c).

2. The reader who wishes to delve into the historical background of the matter on appeal is referred to this court's opinion in *Ouimette v. Moran*, 942 F.2d 1 (1st Cir.1991), where we upheld the district court's grant of habeas relief to codefendant John F. Ouimette, *Ouimette v. Moran*, 762 F.Supp. 468 (D.R.I.1991), as well as to the opinion of the Rhode Island Supreme Court which affirmed appellant's state court conviction. *State v. Byrnes*, 433 A.2d 658 (R.I. 1981).

gument shows, however, that Byrnes and Ouimette were convicted of different levels of involvement in the robbery. Ouimette was not a participant in the actual robbery. He was convicted as a conspirator and an accessory before the fact. The testimony that brought about the *Brady* claim was that of Robert Dussault, and his testimony was the substantial factor which caused Ouimette's conviction. Byrnes, in contrast, was convicted as an actual participant in the robbery, primarily because of the testimony of another participant, Anthony Danese. Clearly, the evidence at trial against Byrnes and Ouimette was not the same. *Byrnes v. Vose*, 777 F.Supp. at 172.

Petitioner Byrnes also conceded during oral argument that, especially after the federal court habeas decisions in *Ouimette*, petitioner has a strong due process argument in either federal or state forums. Notwithstanding, petitioner's argument is to the effect that because of the egregious nature of the state prosecutor's conduct, it would be futile to subject petitioner to further state court proceedings to determine whether the errors at trial were "harmless beyond a reasonable doubt." *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

In *Duckworth v. Serrano*, 454 U.S. 1, 3–4, 102 S.Ct. 18, 19–20, 70 L.Ed.2d 1 (1981) (per curiam), the United States Supreme Court refused to create an exception to the exhaustion requirement where a "clear violation" of the defendant's constitutional rights is established. The Court found that "obvious constitutional errors, no less than obscure transgressions, are subject to the requirements of § 2254(b)," thus obligating the lower court to dismiss the habeas petition. *Id.* at 4, 102 S.Ct. at 19–20. The Court also rejected an argument favoring exception to the exhaustion requirement based on judicial economy. The Court noted that such a rule would likely increase, rather than decrease, federal habeas cor-

pus petitions, since defendants could first seek a federal determination of whether the claim reached the requisite level of validity to dispense with the exhaustion requirement. Finally, the Court noted that even in the case where a clear violation is found, considerations of comity require that state courts be afforded the opportunity, in the first instance, to correct a constitutional violation before a federal court intervenes. *Id. See also Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *Nadworny v. Fair*, 872 F.2d 1093, 1096 (1st Cir.1989) ("Requiring that remedies be exhausted in state courts is merely comity's juridical tool, embodying the federal sovereign's respect for the state courts' capability to adjudicate federal rights."); *Mele v. Fitchburg District Court*, 850 F.2d 817, 819–20 (1st Cir.1988). We think that petitioner's futility argument is foreclosed by *Duckworth* and should be rejected.

## II.

■ With respect to the "egregious" nature of the prosecution misconduct at the state trial, we find no basis, nor has petitioner proffered any, as to why the Rhode Island courts are not fully capable of determining whether the misconduct found in *Ouimette* "tainted" Byrnes' conviction sufficiently to require habeas relief.[3] To the extent that petitioner is asking this court to examine the merits of his claim without first presenting it in the state judicial forum, we think the reasoning of *Duckworth* with respect to "clear violations" is equally applicable to "egregious" ones and petitioner must first exhaust state judicial remedies before seeking redress in federal court.

Petitioner has failed to convince us that recourse to the state postconviction proceedings available in Rhode Island dooms him to the same fate as that originally suffered there by codefendant Ouimette.

---

**3.** At oral argument, counsel for petitioner suggested that, based on all that had transpired with respect to this case, "politics may rear its ugly head" and deny petitioner a fair opportunity to prosecute his claim in the Rhode Island courts. No evidence has been proposed to sup-

port this proposition and, accordingly, we reject petitioner's suggestion that the Rhode Island courts will not fairly and impartially discharge their duty of applying the law to the facts placed before it.

In fact, events subsequent to our decision in *Ouimette* suggest that the Rhode Island judiciary has seriously addressed the issues raised in the *Ouimette* federal court decisions. Following our affirmance of the *Ouimette* district court decision, the Chief Justice of the Rhode Island Supreme Court ordered the Rhode Island Commission on Judicial Tenure and Discipline to investigate the underlying allegations of prosecutorial misconduct. A report has been rendered and the same has been reviewed and adopted by the Rhode Island Supreme Court. *In re DeRobbio*, 604 A.2d 1240 (R.I.1992).

We are convinced that the Rhode Island judiciary will insure that this matter receives careful judicial consideration and that with respect to criminal prosecutions under its jurisdiction, "justice [will] satisfy the appearance of justice." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864, 108 S.Ct. 2194, 2205, 100 L.Ed.2d 855 (1988) (quoting *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955) (quoting *Offutt v. United States*, 348 U.S. 11, 14, 75 S.Ct. 11, 13–14, 99 L.Ed. 11 (1948))).

At this time, we have no basis to find that petitioner's due process claim will not receive a full and fair hearing before the state tribunals of Rhode Island. We express no view on the question whether the circumstances of Ouimette and Byrnes were sufficiently similar as to require the same legal result.

Petitioner's dismissal of his 28 U.S.C. § 2254 habeas corpus petition against his state conviction is now *Affirmed*.